IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| TINA MARIE KELLY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:17-cv-35-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On October 17, 2011, Plaintiff Tina Marie Kelly applied for supplemental security income and disability insurance benefits under the Social Security Act, alleging a disability onset date of February 23, 2001. Kelly's claim was denied at the initial administrative level so she requested a hearing before an Administrative Law Judge ("ALJ"). This hearing was rescheduled several times. On February 5, 2014, the ALJ held a hearing, and on May 16, 2014 denied Kelly's claims. Kelly requested a review of the ALJ's decision by the Appeals Council, and that request was granted. The Appeals Council remanded the case to the ALJ on December 28, 2015. The Appeals Council remanded the case with instructions that the ALJ evaluate Kelly's mental impairments and provide specific findings and appropriate rationale for each of the functional areas described in the regulations, give further consideration to Kelly's maximum residual functional capacity and provide specific references in support of the assessed limitations, and obtain warranted

supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Kelly's occupational base. R. 194.

A hearing was held on April 20, 2016, and Kelly appeared without counsel. She received an unfavorable decision on May 9, 2016. The Appeals Council denied review of the hearing decision on December 15, 2016. Therefore, the hearing decision became the final decision of the Commission of Social Security. Kelly subsequently filed a complaint seeking review of the Commissioner's final decision in this court.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. After thoroughly reviewing the record and the parties' arguments, and for the reasons stated herein, the court finds that the ALJ applied proper legal standards and that her decision is supported by substantial evidence. Therefore, the ALJ's decision will be affirmed, as set forth below.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather

it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant performing substantial gainful activity?
(2) Does she have a severe impairment?
(3) Does she have a severe impairment that equals one of the specific impairments set forth in 20 C.F.R. Pt. 404, Sub pt. P, App. 1?
(4) Is the claimant able to perform past relevant work?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)

(quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Kelly was 34 years old on the alleged disability onset date and 49 years old at the time of the ALJ's decision. She has her GED. R. 445–46. She has work experience as a cleaner, cashier-checker, retail sales clerk, receptionist, reservation clerk, and bookkeeper. R. 103–05.

Following an administrative hearing, the ALJ found that Kelly suffered from the following severe impairments: bipolar disorder, panic disorder, major depressive disorder, a history of polysubstance abuse, and a personality disorder. R. 30. The ALJ also found that Kelly has the following non-severe impairments: headaches, back pain, thrombocytopenia, hypokalemia, asthma, chronic obstructive pulmonary disease, and hypertension. Despite these impairments, the ALJ found at step three of the analysis that Kelly did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. The ALJ further found, at steps four and five, that Kelly has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could perform simple, routine, repetitive tasks, one-to-two step commands, and maintain attention and concentration for two hours at one time; she could adapt to minimal changes in the work setting; should could perform goal-oriented work but not

production pace work; she could have no contact with the general public; she could tolerate occasional contact with supervisors and coworkers; she would miss one day of work per month; and she could make judgments on simple work-related decisions. R. 33. The ALJ found that Kelly could not perform her past relevant work. Based on the testimony of a vocational expert ("VE"), the ALJ found that there were a significant number of other jobs in the national economy that Kelly could perform. R. 40-41.

Ultimately, the ALJ concluded that Kelly was not disabled within the meaning of the Social Security Act, and the ALJ denied her claims. R. 41.

## IV. DISCUSSION

Kelly presents three issues to this court: (1) whether the ALJ properly considered her physical impairments; (2) whether the ALJ erred by failing to order a consultative exam, and (3) whether remand is necessary because the transcript is incomplete. The court will address each of these in turn.

### A. ALJ's Consideration of Physical Impairments

As noted above, the ALJ found that Kelly suffers from severe mental impairments. Kelly argues that the ALJ's finding of no severe physical impairments and the ALJ's failure to place exertional or environmental limitations in the RFC assessment were not based on substantial evidence.

#### 1. *Findings and Severity Determination as to Physical Impairments*

Kelly claims that the ALJ did not consider a closed-head injury she suffered in 2001. She points out that there is medical record documentation of a closed-head injury and concussion in 2001. Kelly also points to 2011 and 2012 records which reference, among

6

other things, her "mild brain atrophy" and state that her "tandem gait is mildly unsteady." R. 589 & 681. Kelly contends that the ALJ's reference within the written decision to treatment for "migraine headaches allegedly due to a remote head injury" (R. 30) implies that there is a question as to whether the head injury occurred and demonstrates that the head injury was not properly considered by the ALJ.

The mention of a condition in the medical records does not establish a disabling impairment. *See Hames v Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Osborn v. Barnhart*, 194 F. App'x 654, 662 (11th Cir. 2006) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) for the proposition that a diagnosis of a condition says nothing about the condition's severity). The issue, therefore, is not whether the ALJ considered the closed-head injury, but whether she considered any impairment caused by the injury. The record reveals that the ALJ considered the impairments that Kelly identifies as stemming from the closed-head injury. The ALJ discussed Kelly's migraines, and referred to medical records which state that Kelly suffered migraines without aura and was given treatment with Topamax. R. 30 & 799–806. In summarizing Kelly's testimony, the ALJ noted that Kelly said her neurologist treats her for headaches secondary to a prior head injury that make her feel off balance. R. 34. The ALJ also stated that Kelly's neurological examination remained within normal limits even though she was treated for migraines through the Alabama Clinics from April to November 2015. R. 30.

Kelly also argues that the ALJ mischaracterized a neurological consult by stating that it did not reveal any neurological deficits and that the symptoms were unlikely to be caused by structural abnormalities of the brain. R. 31. The neurological consult report in

7

question states that the doctor is "unable to localize a neurological deficit. However, therefore, I feel we are forced to exclude a central cause such as an occult subdural or occult lacunar infarction." R. 682. The report also states that the doctor would need an MRI to rule out an ischemic lesion or occult subdural. R. 682.

Upon consideration of the written decision and the record as a whole, the court concludes that the ALJ did consider any impairments resulting from the closed-head injury. While Kelly criticizes the ALJ's characterization as dismissive of her prior head injury, the ALJ considered the evidence of migraines without aura diagnosed in 2015, noted that Kelly testified that the headaches were secondary to an injury in 2001, noted that Kelly stated that she felt off balance, and specifically concluded that headaches were an impairment. The court cannot agree with Kelly's position, therefore, that the ALJ failed to consider the closed-head injury.

Kelly makes an additional argument as to the closed- head injury, which also applies to her physical cardiac and lung impairments. To clarify, Kelly does not argue that the ALJ failed to consider her cardiac and pulmonary conditions and, in fact, the record is clear that the ALJ did consider both. R. 31. Instead, Kelly argues with respect to her cardiac and lung conditions, as well as her head injury, that the ALJ did not follow *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), when she determined that these impairments were non-severe. The ALJ did, however, evaluate various physical impairments and conclude that they did not affect the "ability to engage in basic work activity." R. 31; *see also Brady*, 724 F.2d at 920 (describing a non-severe impairment as a "slight abnormality which has such

a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience").

Even assuming that the ALJ's analysis was flawed, however, the Commissioner responds to Kelly's argument by pointing out that the ALJ found in Kelly's favor at step two so any error in failing to find additional severe impairments is harmless error. *See Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").

The finding of any severe impairment satisfies step two of the analysis, and once the ALJ proceeds beyond step two she is required to consider the claimant's entire medical condition, including impairments the ALJ determined not to be severe. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). In this case, the ALJ found severe impairments of bipolar disorder, panic disorder, major depressive disorder, a history of polysubstance abuse, and a personality disorder. R. 30. The ALJ moved from step two of the required analysis to steps three, four, and five. Therefore, even if Kelly has established error in the ALJ's findings of non-severity with respect to various physical impairments, that error is harmless.

## 2. *Consideration of Physical Impairments in RFC*

Kelly argues that the ALJ did not properly consider her physical impairments in making a finding of her RFC. The applicable regulation describes RFC as follows: "residual functional capacity is the most you can still do despite your limitations. We will

assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545(a). The ALJ must articulate specific findings as to the effect of the combination of all of the claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). A statement by the ALJ that she considered the combination of impairments constitutes an adequate expression of such findings. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding sufficient a statement by the ALJ that "while Jones 'has severe residuals of an injury to the left heel and multiple surgeries on that area,' he does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'").

Kelly's initial argument appears to be that the ALJ did not consider all of her impairments because it was unreasonable not to place any exertional, postural, or environmental limitations on Kelly. The Commissioner's position is that the ALJ's written decision discusses medical evidence and reflects that she did consider Kelly's head-injury-related, cardiac, and lung impairments. The Commissioner further points out that the ALJ stated that she considered "all of the claimant's impairments individually and in combination." R. 32. On this record, the court finds that the ALJ's consideration of the impairments individually and in combination is an adequate expression of her findings on the effect of all of Kelly's impairments. *See Jones*, 941 F.2d at 1533.

Although the argument is not addressed by the Commissioner in her response brief, Kelly makes an additional argument that the ALJ's finding of the RFC is not based on substantial evidence. She argues that the ALJ should have placed exertional, postural, or

environmental limitations on Kelly and that the failure to do so was not based on substantial evidence. If non-exertional impairments exist, the ALJ must "introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question which comprises all of the claimant's impairments. *Id.*

As noted earlier, in her written decision the ALJ made a finding that Kelly has the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: she can perform simple, routine, repetitive tasks and one-to-two step commands; she can maintain attention and concentration for two hours at a time; she can adapt to minimal changes in the work setting or routine; perform goal-oriented work, but not production-pace work; she can have no contact with the general public, but can tolerate occasional contact with supervisors and co-workers; she will miss one day of work per month; and she can make judgments on simple work-related decisions. R. 33. During the hearing, the ALJ posed a hypothetical to the vocational expert which included these limitations and no exertional limitations. R. 105–06.

In her written decision, the ALJ explained that Kelly's "daily activities are inconsistent with the need for greater limitations as she is able to care for herself and her pets independently" and is able to prepare simple meals, perform light chores, and gardening. R. 38. The ALJ considered Kelly's identified symptoms of hypertension, panic attacks, anxiety attacks, major depressive disorder, rectal bleeding, headaches that make

her feel off-balance, and feeling like a "walking zombie," and found that her impairments could be expected to cause the alleged symptoms but that Kelly's statements concerning intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. R. 34.

The ALJ gave great weight to the 2011 opinion of Dr. Heilpern that Kelly had no medically determinable physical impairment. R. 31. The ALJ stated that Dr. Heilpern's opinion was entitled to great weight because it was consistent with the medical evidence of record at that time. R. 31. The ALJ pointed to medical records from 2011 showing "a normal musculoskeletal examination with no extremity tenderness and a full range of motion without edema throughout." R. 31.

Additionally, the ALJ noted that she gave great weight to opinions from Disability Determination Services personnel because they were consistent with the updated medical evidence in the record as a whole. R. 37. This indicates that she reviewed all of the medical records, not just the records which existed at the time of Dr. Heilpern's opinion. The ALJ specifically cited to medical records, including records from 2015 (R. 810), and stated that the "objective musculoskeletal examination findings remained generally grossly normal." R.31.

The Commissioner points out that Kelly does not challenge the portion of the ALJ's decision giving great weight to Dr. Heilpern's opinion. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the claimant had not explicitly challenged the weight given to the medical opinions by the ALJ and, therefore, effectively

had abandoned any challenge to that decision). The Commissioner also states that there is no opinion in the record identifying greater physical limitations than Dr. Heilpern found.

In her written decision, the ALJ specifically discussed an opinion by Dr. Jordan, a licensed clinical psychologist, that physical issues may be a limiting factor for Kelly. Dr. Jordan performed an evaluation of Kelly in February 2016. R. 817. The findings of Dr. Jordan included that

> in terms of vocation, the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a moderate to severe degree due to psychiatric issues. Physical issues may be a primary limiting factor.

R. 819.

The ALJ determined that Dr. Jordan's opinion was to be given only partial weight because the objective evidence does not show any severe physical medically determinable impairments. *See* R. 39; *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (stating "[t]he ALJ's determination that Dr. Schatten's opinion should be given little weight is supported by substantial evidence"). Substantial evidence is defined as more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982), and such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). The district court must view the record as a whole and consider evidence both favorable and unfavorable to the decision. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The court should not reweigh the evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Unsurprisingly, given her instructions on remand from the Appeals Council, the ALJ focused much of her discussion of the RFC on the opinion and medical record evidence relating to Kelly's mental impairments, which has not been challenged by Kelly. Kelly's criticism is that the RFC should have included exertional, postural, or environmental limitations. The ALJ determination that she should not include "greater limitations" was based on Kelly's testimony regarding her daily activities, on medical opinion testimony upon which the ALJ placed great weight, and Kelly's medical records as a whole, as described above. The court finds, therefore, that the ALJ's RFC finding is based on substantial evidence. *See Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) (holding that although claimant was diagnosed with a disorder the record did not include any functional limitations caused by this disorder, so the ALJ did not have to include this diagnosis in his hypotheticals to the vocational expert).

**B.     Request for Consultative Exam**

Kelly seeks remand of this matter for a consultative exam. Her position is that, due to her lack of insurance at certain times, there are gaps of treatment which require a consultative examination for a medical opinion regarding the effects of her conditions.

The Eleventh Circuit has explained that even though Social Security courts are inquisitorial, claimants must establish that they are eligible for benefits. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ has a duty to develop the record "but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Id.* In examining whether the ALJ fully developed the record, courts look to see

if the record contains any evidentiary gaps that resulted in unfairness or clear prejudice. *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016).

The Commissioner argues that Kelly has not demonstrated that her claim was prejudiced by the lack of a consultative exam. The Commissioner argues that a consultative exam for the RFC would not be appropriate because the RFC is a determination to be made by the ALJ. Finally, the Commissioner notes there are 300 pages of medical records, including opinions by expert state-agency consultants. The court also observes that the ALJ did not weigh any deficit in Kelly's treatment records due to her finances against Kelly. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). For these reasons, Kelly has not demonstrated that there are evidentiary gaps which resulted in unfairness or clear prejudice which would warrant remand for a consultative exam. *See Colon*, 660 F. App'x at 870.

**C.     Transcript Completion**

Kelly argues that a transcription from the February 5, 2014 hearing is absent from the record, providing good cause for remand. In response, the Commissioner has supplemented the record and provided the transcript from the hearing. The court cannot conclude, therefore, that remand is required now that the record is complete. *See Cruz v. Colvin*, 2016 WL 7734659, at *11 (S.D. Tex. Aug. 15, 2016) (denying remand and noting that a full record was available to the court once the Commissioner supplemented the administrative transcript).

## V. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is AFFIRMED. A final judgment will be entered separately.

DONE this 16th day of July, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE